1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**O**

JS-6

# United States District Court
# Central District of California

EDWARD LEON GUY, III,

    Plaintiff-Appellant,

  v.

AT&T Corporation,

    Defendant-Appellee.

Case Nos. 2:16-cv-00038-ODW
     2:16-cv-01501
     2:16-cv-00504
     2:16-cv-00781
2:15-ap-01567 ER
USBC 2:15-bk-17887 ER

**ORDER AFFIRMING THE BANKRUPTCY COURT**

## I.   INTRODUCTION

This is a consolidated appeal from orders issued by the Bankruptcy Court granting summary judgment in favor of Appellee, AT&T Corp. and sanctioning Appellant, Edward Leon Guy, III, for abuse of process.  Appellant asserts four grounds for appeal: (1) that the Bankruptcy Court improperly treated Appellee's motion to dismiss as a motion for summary judgment; (2) that the Bankruptcy Court improperly awarded Appellee summary judgment; (3) that the Bankruptcy Court lacks the authority to impose sanctions in this action; and (4) that the Bankruptcy Court improperly sanctioned him $5,800 in attorney's fees for abuse of process.  For the

reasons discussed below, the Court **AFFIRMS** the Bankruptcy Court and **DISMISSES** all four of Appellant's grounds for appeal.[1]

## I.   FACTUAL BACKGROUND

On May 18, 2015, Appellant filed for Bankruptcy relief pursuant to Chapter 7 of Title 11 of the United States Code and was awarded an automatic stay. (ER 2.) On September 1, 2015, Appellant filed an adversary complaint in the Bankruptcy Court alleging that Appellee violated the automatic stay. (*Id.* at 7.) On October 21, 2015, the parties entered into a settlement agreement. (*Id.* at 12.) In exchange for Appellant's promise to drop the charges contained in his adversary complaint, Appellee agreed to pay Appellant $5,000. (*Id.* at 9.) The terms of payment were as follows:

> The settlement sum shall be paid by check. Such check shall be made payable to the order of Edward Leon Guy, III, 4071 S. Muirfield Road, Apt. B, Los Angeles, CA 90008. The Settlement Sum shall be delivered within (7) days of the date on which both of the following conditions have been met: (i) Debtor delivery to AT&T of a copy of this Settlement Agreement executed by the Debtor and (ii) Delivery to AT&T of a December 2014 IRS Form W-9 . . . completed by payee. (*Id.* at 9.)

It appears that Appellant met the two prerequisites for issuance, as Appellee's bank, JP Morgan Chase, issued the check to Appellant on October 26, 2015, in the amount of $5,000. (*Id.* at 14.) Appellant allegedly went to a Chase bank the same day and attempted to cash the check even though he did not maintain an account at that bank. (*Id.* at 3.) Appellant claims that he was told the check was "made over the

---

[1]After considering the briefs and excerpts of record filed by each party, the Court finds that the decisional process would not be significantly aided by oral argument because the facts and legal arguments are adequately presented in the briefs and record. Fed. R. Bankr. P. 8019(b)(3).

allowable limit of the account from which the check was drawn." (*Id*.)  He also claims that he was told the account from which the check was drawn "could only tender a check for the maximum amount [of] one thousand dollars" on any given day. (*Id*. at 4.)  Appellant soon after contacted Appellee and claimed that it had knowingly issued him a check that could not be tendered for the full $5,000 amount.  (*Id*.) Appellee told Appellant that he was mistaken; that the check was "good," it just needed to be deposited into his account.  (*Id*. at 3.)

On October 29, 2015, Appellant filed the complaint underlying this appeal alleging breach of contract and unfair business practices based on his alleged inability to cash the check at Chase bank.  (*Id*. at 1.)  As relief, Appellant asked for the "the entire amounts of debts which [he] sought to discharge through his bankruptcy case." (*Id*. at 4.)  Appellant attached to his complaint a copy of the settlement agreement and a copy of an uncashed $5,000 check from Appellee numbered 3318890509.  (*Id*. at 7-14.)

Appellee filed a motion to dismiss on December 2, 2015, alleging that Appellant had failed to state a claim upon which relief could be granted because it had fulfilled its obligations under the settlement agreement.  (*Id*. at 21, 24-25.)  Attached to the motion was a cancelled $5,000 check numbered 3318890509.  (*Id*. at 32.)  This check was cashed and signed by Appellant at Nix Check Cashing on October 28, 2015.  (*Id*.)  Given that this check had been cashed for $5,000 the day before Appellant filed an adversary complaint alleging that the check could not be cashed for the full $5,000 amount, Appellee also asked the Bankruptcy Court to impose sanctions for abuse of process.  (*Id*. at 26.)

Appellant filed opposition to Appellee's motion to dismiss on December 14, 2015.  (*Id*. at 36.)  In his opposition, Appellant reiterated his previous claims.  (*Id*. at 40.)  Appellant additionally asserted that Appellee was "obligated to write checks that [could] be cashed at the institution where the [checks were] made" citing his first amendment right to freedom of association.  (*Id*. at 43.)  Attached to Appellant's

opposition was an email from Appellant to Appellee's attorney in which Appellant indicates that he does not "want to put [the] check through his personal account." (*Id.* at 59.)

On December 16, 2015, the Bankruptcy Court issued an order indicating that Appellee's motion to dismiss would be converted into a motion for summary judgment. (*Id.* at 34.)  Besides providing notice of the conversion to the parties, the order invited the parties to submit any additional evidence necessary to support their respective positions by December 30, 2015. (*Id.*)  On December 29, 2015, Appellant filed an interlocutory appeal of the Bankruptcy Court's order. (*Id.* at 74.)

Appellee filed a reply to Appellant's opposition on December 30, 2015. (*Id.* at 68.)  In its reply, Appellee reiterated that it had fully performed under the settlement agreement. (*Id.* at 69.)  It also maintained that there was no dispute of material fact and that summary judgment was appropriate based upon the evidence under submission. (*Id.*)

The Bankruptcy Court issued a tentative ruling on January 6, 2016, granting Appellee's motion for summary judgment. (*Id.* at 85.)  This tentative ruling was formalized in a final order issued on January 19, 2016. (*Id.* at 102.)  Appellant appealed the Bankruptcy Court's final order on January 20, 2016. (*Id.* at 103.)

Meanwhile, on January 7, 2016, the Bankruptcy Court issued an order to show cause ("OSC") why Appellant should not be sanctioned for filing a frivolous complaint. (*Id.* at 89.)  On January 20, 2016, Appellant filed an interlocutory appeal of the OSC. (*Id.* at 103.)  On February 17, 2016, the Bankruptcy Court issued a tentative ruling sanctioning Appellant $5,800, the amount Appellee incurred in attorney's fees defending against Appellant's frivolous claims. (*Id.* at 124.)  This ruling was formalized in a final order issued on February 23, 2016. (*Id.* at 141.)  Appellant appealed the Bankruptcy Court's final order on March 1, 2016. (*Id.* at 136.)  Appellant's four appeals were consolidated into a single appeal on March 31, 2016. (ECF No. 7.)

## II.    JURISDICTION

The Court has jurisdiction to hear this bankruptcy-court appeal under 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8001(b).

## III.    STANDARD OF REVIEW

A district court reviews a bankruptcy court's legal determinations de novo. *In re Olshan,* 356 F.3d 1078, 1083 (9th Cir. 2004).  However, a district court must accept a bankruptcy court's factual findings unless those findings are clearly erroneous. *Id.*

A bankruptcy court's decision to impose sanctions is reviewed for abuse of discretion. *See In re S. Cal. Sunbelt Developers, Inc.,* 608 F.3d 456, 461 (9th Cir. 2010) (citing *Higgins v. Vortex Fishing Sys., Inc.,* 379 F.3d 701, 705 (9th Cir. 2004)); *In re Lehtinen*, 564 F.3d 1052, 1058 (9th Cir. 2009); *In re 450 S. Burlington Partners, LLC*, No. BR LA 09-15319 SB, 2011 WL 2470102, at *3 (C.D. Cal. June 20, 2011).  A court abuses its discretion if its decision is based upon "an erroneous view of the law or on a clearly erroneous assessment of the evidence." *See Holgate v. Baldwin,* 425 F.3d 671, 675 (9th Cir. 2005) (citing *Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am., LLC,* 339 F.3d 1146, 1150 (9th Cir. 2003)).

## IV.    DISCUSSION

**A. Whether the Bankruptcy Court Properly Converted Appellee's Motion to Dismiss into a Motion for Summary Judgment**

Appellant makes two arguments related to the Bankruptcy Court's conversion of Appellee's motion to dismiss into a motion for summary judgment.  First, he argues that the conversion was procedurally improper, and second, he argues that the conversion order did not allow him adequate time to gather evidence in opposition of Appellee's motion for summary judgment.  (Appellant's Br. 5, ECF No. 16.)

In determining whether to grant a Federal Rule of Civil Procedure ("FRCP") 12(b)(6) motion to dismiss, a court analyzes whether the complaint has set forth a cognizable legal theory and whether there are sufficient facts alleged in the complaint to support that legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699

(9th Cir. 1990); *see also Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003) (requiring only a short and plain statement of the claim to survive a motion to dismiss). This analysis is generally limited to information contained in the complaint. *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001).

When a court "affirmatively decides to consider additional material" beyond that allowed by FRCP 12(b)(6), it has the discretion to convert a motion to dismiss into a motion for summary judgment. *See Swedberg v. Marotzke*, 339 F.3d 1139, 1144 (9th Cir. 2003) (agreeing with *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.,* 109 F.3d 993 (4th Cir. 1997)). A court typically initiates the conversion process by informing the parties that it will "not exclude from its consideration . . . supporting extraneous materials." *Swedberg*, 339 F.3d at 1144; *see also Sebert v. Arizona Dep't of Corr.*, No. CV1600354PHXROSESW, 2016 WL 3456909, at *1 (D. Ariz. June 17, 2016) (citing *Swedberg* for the proposition that a court must take affirmative action to initiate conversion); *In re Dykstra*, No. 1:09-BK-18409-GM, 2012 WL 2131848, at *1 n.9 (Bankr. C.D. Cal. June 12, 2012) (providing an example of the conversion process in bankruptcy court). The conversion process is then completed when the court relies on those extraneous materials to render its decision on the motion. *Cf. Swedberg*, 339 F.3d at 1143 (citing cases where courts opted not to consider extrinsic evidence submitted by the parties and instead treat the pending motions as motions to dismiss).

Here, the Bankruptcy Court properly exercised its discretion to convert Appellee's motion to dismiss into a motion for summary judgment. The Bankruptcy Court affirmatively initiated the conversion process by providing notice to both parties that it would consider extrinsic evidence in its evaluation of Appellee's motion and thus treat it as one for summary judgment. (ER 34.) The Bankruptcy Court then completed the conversion process by relying on extrinsic materials (the settlement agreement and the cashed check attached to the declaration of Karen Cavagnaro) in its decision to grant Appellee summary judgment. (*Id.* at 85-86.)

1    The Court also finds that the Bankruptcy Court gave Appellant sufficient notice
2    of its intent to convert Appellee's motion to dismiss into one for summary judgment.
3    Appellant argues that he only had four days to gather and submit additional evidence
4    in light of the Christmas holiday.  (Appellant's Br. 5.)  This is simply not true.  The
5    Bankruptcy Court issued its conversion order on December 16, 2015, allowing
6    additional evidence to be submitted until December 30, 2015.  (ER 34.)  Even taking
7    into account the Christmas holiday, this allowed Appellant at least ten days to gather
8    and submit any evidence he wished to be considered.  The Court also notes Appellant
9    chose not to seek a continuance that would have allowed him additional time to gather
10   evidence beyond the December 30, 2015 deadline.

11   Even more fundamentally, it is unclear what evidence Appellant needed
12   additional time to gather.  Appellant at no point brought to the Bankruptcy Court's
13   attention, or this Court's attention on appeal, any outstanding, admissible evidence
14   that would have altered the outcome of his adversary proceeding.  Accordingly, the
15   Court affirms the Bankruptcy Court's decision to convert Appellee's motion to
16   dismiss into one for summary judgment.

17   **B. Whether the Bankruptcy Court Properly Granted Summary Judgment**

18   Summary judgment should be granted if there is no genuine dispute of material
19   fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.
20   56(a).  A disputed fact is "material" where the resolution of that fact might affect the
21   outcome of the case under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477
22   U.S. 242, 248 (1968).  The moving party bears the initial burden of establishing the
23   absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317,
24   323–24 (1986).  Once the moving party has met its burden, the nonmoving party must
25   go beyond the pleadings to identify specific material facts in dispute that necessitate
26   holding a trial.  *Id.*; Fed. R. Civ. P. 56(c).

27   Conclusory statements contained in affidavits and moving papers are
28   insufficient to raise genuine issues of fact and defeat summary judgment.  *See*

*Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979); *see also Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000) (finding there must be more than a "scintilla" of contradictory evidence present to avoid summary judgment).

The Court agrees with the Bankruptcy Court that there is no dispute of material fact in this case.  Appellant received a cashable $5,000 check from Appellee within seven days of the settlement agreement's execution.   (ER 32, 56, 64.)   While Appellant made several self-serving, conclusory statements in his moving papers essentially alleging that he received a "bad" settlement check not cashable for $5,000, these statements do not create a genuine issue of material fact capable of defeating a motion for summary judgment, where, as here, both parties independently submitted objective evidence (the cancelled check and the Nix check cashing receipt) definitively nullifying those conclusory statements.  (*Id.* at 32, 56, 64); *see Thornhill's Publ'g Co.,* 594 F.2d at 738; *Addisu*, 198 F.3d at 1134; *see also Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir. 1972) ("If, indeed, evidence [is] available to underpin [the] conclusory statement, Rule 56 require[s] (the party opposing summary judgment) to come forward with it.")

Having found there to be no dispute of material fact, the Court turns to whether the undisputed facts are sufficient to state a claim.  In California, "[a] cause of action for breach of contract requires proof of the following elements: (1) existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008).[2]  The only issue in this case is whether there was a material breach of the settlement agreement, in other words, nonperformance of a contractual duty.  As the cashed $5,000 settlement check proves, Appellee provided a check payable to Appellant for the full agreed upon amount

---

[2] Settlement agreements are contracts governed by local law.  *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989).

within seven days of the settlement agreement's execution.   Therefore, Appellee fulfilled its obligations under the settlement agreement.

As the Bankruptcy Court correctly noted, the settlement agreement did not obligate Appellee to provide Appellant with a check that could be cashed at Chase bank where he did not maintain an account.  (ER 86.)  Appellant has not presented evidence that such an interpretation was contemplated by the parties at formation or that such an interpretation would be objectively reasonable under the circumstances. If Appellant desired a check cashable at Chase bank—where he did not maintain an account—he could have negotiated for the issuance of a cashier's check or a check made out to "cash."  Unfortunately for Appellant, the settlement agreement does not call for either of these forms of payment; it calls for a traditional check made out to Edward Leon Guy, III.  (*Id.* at 9.)  In sum, because the ability to cash the check at Chase bank where Appellant did not maintain an account was not a term of the contract, there can be no breach of contract for failure to comply with it.

Lastly, the Court considers Appellant's claim for unfair business practices. While Appellant has not identified under which specific statute his claim arises, the Court construes his claim as one arising under the California's Unfair Business Practices Act (UBPA).  Cal.Bus. & Prof.Code § 17200; *Freeman v. Time, Inc.*, 68 F.3d 285, 288 (9th Cir. 1995).  This Act is California's primary method of regulating "unlawful, unfair or fraudulent business practice[s]."  *Freeman*, 68 F.3d at 288. Courts have determined that "unfair" practices are those that "offend established public policy or that are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001) (citing *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632 (1996)).[3]  To obtain relief for unfair business practices, the movant must prove that "members of the

---

[3]  The term "practice" as defined in California Business and Professions Code § 17200 has been interpreted broadly to encompass a wide variety of business activities.  *Glenn K. Jackson Inc.*, 273 F.3d at 1203.

public" or "reasonable consumers" are "likely to be deceived" by the practice at issue. *Freeman*, 68 F.3d at 289.

Appellant's unfair business practices claim is properly subject to a motion for summary judgment because it is not supported by evidence that Appellee engaged in deception.  While Appellant never clearly articulates Appellee's alleged "deception," he seems to imply that the language of the settlement agreement would cause a reasonable consumer in his position to believe that they would receive a check cashable at the bank of issuance regardless of whether they maintained an account there, and that by not providing such a check, Appellee engaged in deception.  (ER 4.)

However, Appellant has presented no evidence to support his view that the reasonable consumer would be deceived by the language of the contract into believing they would receive a check cashable at the bank of issuance (in this case Chase bank). Indeed, the evidence submitted shows Appellant's interpretation of the contract was not driven by his expectation as a reasonable consumer but by his individual preference not to "put [the] check . . . through his personal" bank account.  (*Id.* at 59.)

Having found that Appellee did not engage in deception, the Court finds that the Bankruptcy Court properly granted Appellee summary judgment as to Appellant's unfair business practices claim.  As there is no dispute of material fact and because Appellant failed to make out a claim for breach of contract or unfair business practices, the Court affirms the Bankruptcy Court's grant of summary judgment to Appellee.

## C. Whether the Bankruptcy Court has the Authority to Impose Sanctions

Appellant appealed the Bankruptcy Court's OSC regarding sanctions.  (*Id.* at 103.)  Without further elaboration in Appellant's appellate brief as to what he intended by this interlocutory OSC appeal, the Court construes Appellant's interlocutory OSC appeal as one questioning the Bankruptcy Court's authority to impose sanctions.  This claim is easily dismissed.

The Ninth Circuit has definitively established that bankruptcy courts, like Article III courts, possess the inherent power to sanction. *See In re Rainbow Magazine, Inc.,* 77 F.3d 278, 284 (9th Cir. 1996); *Lehtinen,* 564 F.3d at 1058; *see also* 11 U.S.C. § 105(a). Moreover, there are numerous examples of bankruptcy courts using their inherent power to sanction parties for bad faith or abuse of process. *See Marrama v. Citizens Bank Mass.*, 549 U.S. 365, 375 (2007) (indicating that bankruptcy courts may take "any action that is necessary or appropriate to prevent an abuse of process") (internal quotations omitted); *see also Gonzales v. Parks*, 830 F.2d 1033, 1035–36 (9th Cir. 1987) (cumulating bankruptcy court cases where sanctions were imposed for proceeding in bad faith). Therefore, the Court dismisses Appellant's OSC appeal.

**D. Whether the Bankruptcy Court Properly Imposed a $5,800 Sanction on Appellant for Abuse of Process**

Bankruptcy Courts have the power to sanction for abuse of process. *Marrama*, 549 U.S. at 375. Abuse of process has been defined to include vexatiously multiplying bankruptcy proceedings and other lesser forms of bad faith conduct such as "knowingly or recklessly [raising] a frivolous argument." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648-649 (9th Cir. 1997); *see also In re A & E Family Inv., LLC*, 359 B.R. 249, 261 (Bankr. D. Ariz. 2007) (citing *Rainbow Magazine,* 77 F.3d at 283).

Sanctions in bankruptcy court usually take the form of reasonable attorney's fees because other types of financial sanctions are likely to be dischargeable. *See e.g.*, *In re Wood*, 167 B.R. 83, 88 (Bankr. W.D. Tex. 1994). When a court is contemplating sanctions, the lawyer or party targeted for sanctions must be given notice and an opportunity to be heard prior to the ultimate decision to impose sanctions. *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1198 (9th Cir. 1999).

The Bankruptcy Court sanctioned Appellant reasonable attorney's fees for filing a frivolous adversary complaint and then subsequently making frivolous

1    arguments in furtherance of that complaint.  (ER 130-132.)  This Court finds that the
2    Bankruptcy Court did not abuse its discretion by imposing $5,800 in attorney-fee
3    sanctions.

4        Appellant filed an adversary complaint on October 29, 2015, alleging that the
5    check he received as part of his settlement agreement with Appellee was not cashable
6    because there were allegedly insufficient funds in the account from which it was
7    drawn and the account did not allow for withdrawals over $1,000 in a single day.  On
8    October 28, 2015, Appellant cashed the settlement check for the entire $5,000 amount,
9    indicating both that there were sufficient funds in the account and that withdrawals of
10   over $1,000 from that account could be made in a single day.  (*Id.* at 32, 56, 64.)
11   Therefore, he knowingly filed an adversary complaint containing frivolous arguments.
12   He then continued to make these same frivolous arguments several more times to the
13   Bankruptcy Court and even now sets forth these arguments on appeal.  (ER 40, 121;
14   Appellant's Br. 4.)

15       The Court also finds that Appellant filed his adversary complaint with ulterior
16   motives.  Rather than seeking damages roughly equivalent to the harm he allegedly
17   suffered, Appellant sought damages in "the entire amounts of debts which [he] sought
18   to discharge through his bankruptcy case."  (ER 4.)  To be blunt, he was hoping that
19   another suit against Appellee would make his financial problems disappear.

20       Finally, the Court finds that the Bankruptcy Court provided Appellant with the
21   required procedural due process before imposing sanctions; it sent Appellant a notice
22   indicating its intention to consider sanctions and held a hearing on February 17, 2016
23   where Appellant was given the opportunity to account for his actions.  (ER 89, 120);
24   *see also Weissman*, 179 F.3d at 1198.  The Bankruptcy Court also supported its
25   sanctions award with an itemized billing statement from Appellee's attorney that
26   limited fees to those reasonably incurred defending against Appellant's meritless
27   claims.  (ER 99.)  Because there was cause for sanctions and proper procedural

28

protections were in place, the Court finds that the Bankruptcy Court did not abuse its discretion by imposing a $5,800 attorney-fee sanction on Appellant.[4]

## V.    CONCLUSION

For the reasons discussed above, the orders of the Bankruptcy Court are **AFFIRMED** and all four of Appellant's grounds for appeal are **DISMISSED**.


**IT IS SO ORDERED.**

October 13, 2016


_____
              **OTIS D. WRIGHT, II**
     **UNITED STATES DISTRICT JUDGE**

---

[4] While the Court notes that Appellant has chosen to proceed pro se in this action, that fact does not excuse his behavior. Appellant is a law school graduate and therefore clearly should have known better.  (ECF No. 16.)